IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

DORIS J.,[1]               )
                           )
          Plaintiff,       )
                           )
vs.                        )   Civil No. 17-cv-1389-CJP[2]
                           )
COMMISSIONER OF SOCIAL     )
SECURITY,                  )
                           )
          Defendant.       )

## MEMORANDUM and ORDER

**PROUD, Magistrate Judge:**

In accordance with 42 U.S.C. § 405(g), plaintiff seeks judicial review of the final agency decision denying her application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) benefits pursuant to 42 U.S.C. § 423.

## Procedural History

Plaintiff applied for benefits in November 2014, alleging disability beginning on May 24, 2012. After holding an evidentiary hearing, ALJ Scott Johnson denied the application on September 26, 2016. (Tr. 22-29). The Appeals Council denied review, and the decision of the ALJ became the final agency decision. (Tr. 1). Administrative remedies have been exhausted and a timely complaint was filed in this Court.

---

[1] In keeping with the court's recently adopted practice, plaintiff's full name will not be used in this Memorandum and Order due to privacy concerns. See, Fed. R. Civ. P. 5.2(c) and the Advisory Committee Notes thereto.

[2] This case was assigned to the undersigned for final disposition upon consent of the parties pursuant to 28 U.S.C. §636(c). See, Doc. 25.

## Issue Raised by Plaintiff

Plaintiff raises the following issue:

1. Whether the ALJ erred in finding plaintiff was able to perform her past relevant work where one of the jobs was not performed at the level of substantial gainful activity and there is evidence that the vocational expert misclassified the other job.

## Applicable Legal Standards

To qualify for DIB or SSI, a claimant must be disabled within the meaning of the applicable statutes.[3] In this context, "disabled" means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

A "physical or mental impairment" is an impairment resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. § 423(d)(3). "Substantial gainful activity" is work activity that involves doing significant physical or mental activities, and that is done for pay or profit. 20 C.F.R. § 404.1572.

Social Security regulations set forth a sequential five-step inquiry to determine whether a claimant is disabled. The Seventh Circuit Court of Appeals

---

[3] The statutes and regulations pertaining to Disability Insurance Benefits (DIB) are found at 42 U.S.C. § 423, et seq., and 20 C.F.R. pt. 404. The statutes and regulations pertaining to SSI are found at 42 U.S.C. §§ 1382 and 1382c, et seq., and 20 C.F.R. pt. 416. The standard for disability under both sets of statutes are identical. Furthermore, 20 C.F.R. § 416.925 detailing medical considerations relevant to an SSI claim, relies on 20 C.F.R. Pt. 404, Subpt. P, the DIB regulations. Most citations herein are to the DIB regulations out of convenience.

has explained this process as follows:

> The first step considers whether the applicant is engaging in substantial gainful activity. The second step evaluates whether an alleged physical or mental impairment is severe, medically determinable, and meets a durational requirement. The third step compares the impairment to a list of impairments that are considered conclusively disabling. If the impairment meets or equals one of the listed impairments, then the applicant is considered disabled; if the impairment does not meet or equal a listed impairment, then the evaluation continues. The fourth step assesses an applicant's residual functional capacity (RFC) and ability to engage in past relevant work. If an applicant can engage in past relevant work, he is not disabled. The fifth step assesses the applicant's RFC, as well as his age, education, and work experience to determine whether the applicant can engage in other work. If the applicant can engage in other work, he is not disabled.

*Weatherbee v. Astrue*, 649 F.3d 565, 568-569 (7th Cir. 2011).

Stated another way, it must be determined: (1) whether the claimant is presently unemployed; (2) whether the claimant has an impairment or combination of impairments that is serious; (3) whether the impairments meet or equal one of the listed impairments acknowledged to be conclusively disabling; (4) whether the claimant can perform past relevant work; and (5) whether the claimant is capable of performing any work within the economy, given his or her age, education and work experience. 20 C.F.R. § 404.1520; *Simila v. Astrue*, 573 F.3d 503, 512-513 (7th Cir. 2009).

If the answer at steps one and two is "yes," the claimant will automatically be found disabled if he or she suffers from a listed impairment, determined at step three. If the claimant does not have a listed impairment at step three and cannot perform his or her past work (step four), the burden shifts to the Commissioner at step five to show that the claimant can perform some other job. *Rhoderick v.*

3

*Heckler*, 737 F.2d 714, 715 (7th Cir. 1984). *See also Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001) (Under the five-step evaluation, an "affirmative answer leads either to the next step, or, on Steps 3 and 5, to a finding that the claimant is disabled.... If a claimant reaches step 5, the burden shifts to the ALJ to establish that the claimant is capable of performing work in the national economy.").

This Court reviews the Commissioner's decision to ensure that the decision is supported by substantial evidence and that no mistakes of law were made. It is important to recognize that the scope of review is limited. "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. § 405(g). Thus, this Court must determine not whether plaintiff was, in fact, disabled at the relevant time, but whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). This Court uses the Supreme Court's definition of substantial evidence, i.e., "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

In reviewing for "substantial evidence," the entire administrative record is taken into consideration, but this Court does <u>not</u> reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. *Murphy v. Colvin,* 759 F.3d 811, 815 (7th Cir. 2014). However, while judicial review is deferential, it is not abject; this Court does not act as a rubber

4

stamp for the Commissioner. See, *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010), and cases cited therein.

## The Decision of the ALJ

ALJ Johnson followed the five-step analytical framework described above. He determined that plaintiff had not been engaged in substantial gainful activity since the alleged onset date and that plaintiff was insured for DIB only through June 30, 2014. The ALJ found that plaintiff had severe impairments of degenerative disc disease of the lumbar spine, thrombocytopenia, history of lupus, and hypertension, which did not meet or equal a listed impairment.[4]

The ALJ found that plaintiff had the residual functional capacity (RFC) to perform a limited range of light work. Her limitations were that she can occasionally climb ramps and stairs; never climb ladders, ropes, or scaffolds; and tolerate only occasional exposure to extreme cold and hazards (including the use of moving machinery and exposure to unprotected heights).

Based on the testimony of a vocational expert, the ALJ found that plaintiff was not disabled because she was able to do her past relevant work as a cafeteria food service worker and as a daycare provider as those jobs are generally performed in the national economy.

## The Evidentiary Record

The Court has reviewed and considered the entire evidentiary record in formulating this Memorandum and Order. In view of plaintiff's arguments, the

---

[4] "Thrombocytopenia is a condition in which you have a low blood platelet count. Platelets (thrombocytes) are colorless blood cells that help blood clot." https://www.mayoclinic.org/diseases-conditions/thrombocytopenia/symptoms-causes/syc-20378293, visited on December 5, 2018.

5

Court will omit a discussion of the medical evidence. In addition, the Court will not discuss the evidence related to plaintiff's point about her past job as a cafeteria food service worker because defendant concedes that job did not qualify as past relevant work. See, Doc. 26, p. 2, n.1.

In a work history form submitted in January 2015, plaintiff said she worked as a daycare provider in a home daycare from October 1998 to June 2004. In that job, she kept the children safe, read to them, played with them, cooked, and cleaned. The heaviest weight lifted was 50 pounds, and she frequently lifted 25 pounds. She stood/walked for 7 hours and sat for 5 hours. (Tr. 252-257).

Plaintiff was represented by an attorney at the evidentiary hearing in August 2016. A vocational expert (VE) listened to her testimony. (Tr. 37).

Plaintiff testified that she was self-employed as a daycare worker from 1999 to 2003 in her home. She was licensed. She had about 8 children in the beginning, and about 3 at the end. She prepared meals and snacks for the children. She changed diapers, played games with the kids, and did some "educational-type things." (Tr. 46-47).

The VE said she did not need any additional information about the daycare worker job. (Tr. 48). She had reviewed the "E" section of the record, which would have included plaintiff's work history report, Ex. 3E. The VE classified her past work as a daycare provider as light per the Dictionary of Occupational Titles (DOT) but performed by plaintiff at the light to medium exertional level. (Tr. 65).

The ALJ asked a hypothetical question which corresponded to the RFC assessment. The VE testified plaintiff was able to do her past job as a daycare

6

provider as that job is described in the DOT, but not as it was performed by plaintiff. (Tr. 66).

The VE testified that her testimony was consistent with the DOT. Plaintiff's counsel asked no questions of the VE. (Tr. 66).

### **Analysis**

Plaintiff argues that the ALJ erred at step four in finding that she can do her past relevant work.

Past work is "relevant" when it: (1) was done within the last 15 years; (2) lasted long enough for the claimant to learn to do the job; and (3) was substantial gainful activity. 20 C.F.R. §§ 404.1560(b).

As was noted above, the Commissioner concedes that plaintiff's past work as a cafeteria food service worker did not qualify as past relevant work because it was not performed at the level of substantial gainful activity. See, Doc. 26, p. 2, n.1.

Plaintiff does not dispute that her past work as a daycare provider qualifies as past relevant work. She argues that the ALJ erred in that he failed to make specific findings as to the requirements of her previous job. She cites *Nolen v. Sullivan*, 939 F.2d 516, 518 (7th Cir. 1991), in support

It is doubtful whether *Nolen* stands for the proposition that plaintiff thinks it does. The error in *Nolen* was that the ALJ described the previous jobs *generally* based on their exertional level. *Nolen*, 939 F.2d at 519. The Seventh Circuit has construed *Nolen* narrowly, holding that "an ALJ cannot describe a previous job in a generic way, e.g., 'sedentary,' and on that basis conclude that the claimant is fit to perform all sedentary jobs without inquiring into any differences in what the job

requires while sitting." *Cohen v. Astrue*, 258 Fed. Appx. 20, 28 (7th Cir. 2007) (citing *Smith v. Barnhart*, 388 F.3d 251, 252-53 (7th Cir. 2004)). As plaintiff concedes, in most cases, it would be a "viable argument" that *Nolen* does not apply where, as here, the ALJ relied on the testimony of a VE to determine that plaintiff could still perform her past job. See. Doc. 17, p. 10. This leads her to argue that reliance on the VE is not sufficient here, though, because the VE's testimony was flawed.

Plaintiff contends that the VE's testimony was flawed because the VE did not provide the DOT code to identify her past work, and, without the DOT code, there is no way to determine whether the VE's testimony was accurate.

When a VE testifies, the ALJ is required to ask the VE whether there are any conflicts between her testimony and the information in the DOT; if so, the ALJ must resolve those conflicts. *Overman v. Astrue*, 546 F.3d 456, 463 (7th Cir. 2008). The ALJ asked the VE about conflicts here, and the VE did not identify any conflicts. Plaintiff cites to no authority requiring the ALJ to ask the VE to identify the DOT code that corresponds to the plaintiff's past relevant work. This Court's independent research has not located any such authority.

Plaintiff contends that it is unclear which DOT job title the VE thought corresponded to her job as a daycare provider. She argues that there is no DOT title named "daycare worker." See, Doc. 17, p. 11. There is, she acknowledges, a DOT title named Nursery School Attendant, DOT 359.677-018. The duties of that job are:

Organizes and leads activities of prekindergarten children in nursery schools

> or in playrooms operated for patrons of theaters, department stores, hotels, and similar organizations: Helps children remove outer garments. Organizes and participates in games, reads to children, and teaches them simple painting, drawing, handwork, songs, and similar activities. Directs children in eating, resting, and toileting. Helps children develop habits of caring for own clothing and picking up and putting away toys and books. Maintains discipline. May serve meals and refreshments to children and regulate rest periods. May assist in preparing food and cleaning quarters.

1991 WL 672970. Plaintiff fails to acknowledge that, per the DOT, alternate names for that job are Child-Care Leader, Child-Day-Care Center Worker, and Day Care Worker. The job is classified as light exertion and semi-skilled.

Plaintiff contends that her daycare provider job does not fit DOT 359.677-018 because her job was performed in her home, and not in a nursery school or a playroom operated for patrons of theaters, department stores, hotels, and similar organizations. She says her job is more akin to the DOT title of Child Monitor, 301.677-010, which has the following duties:

> Performs any combination of following duties to attend children in private home: Observes and monitors play activities or amuses children by reading to or playing games with them. Prepares and serves meals or formulas. Sterilizes bottles and other equipment used for feeding infants. Dresses or assists children to dress and bathe. Accompanies children on walks or other outings. Washes and irons clothing. Keeps children's quarters clean and tidy. Cleans other parts of home. May be designated Nurse, Infants' (domestic ser.) when in charge of infants. May be designated Baby Sitter (domestic ser.) when employed on daily or hourly basis.

1991 WL 672652. The Child monitor job has an alternate title of Nurse, Children's. It is medium exertion and is in the Domestic Services industry.

Plaintiff was represented by counsel and she is presumed to have put forth her best case for benefits at the hearing. *Skinner v. Astrue*, 478 F.3d 836, 842 (7th Cir. 2007). Plaintiff's counsel did not object to the VE's testimony, point out

that she had not given DOT codes, or ask any questions of the VE.[5] An ALJ may rely on even "purely conclusional" VE testimony that goes unchallenged. *Barrett v. Barnhart*, 355 F.3d 1065, 1067 (7th Cir.), on reh'g, 368 F.3d 691 (7th Cir. 2004). See also, *Liskowitz v. Astrue*, 559 F.3d 736, 744 (7th Cir. 2009) ("Had [plaintiff] actually objected to the VE's testimony, the VE could have said more . . .. As it stands, however, the VE's testimony was both unobjected to and uncontradicted. Thus, the ALJ was entitled to credit this testimony."); *Donahue v. Barnhart*, 279 F.3d 441, 446-47 (7th Cir. 2002) ("When no one questions the vocational expert's foundation or reasoning, an ALJ is entitled to accept the vocational expert's conclusion.")

This Court concludes, based on the above precedents, that the ALJ did not err in accepting the VE's testimony that plaintiff could perform her past relevant work as a daycare worker where that testimony was not questioned by plaintiff's counsel at the hearing.

It is true that the ALJ has a duty to resolve apparent conflicts with the DOT. Because plaintiff did not object at the hearing, she "now has to argue that the conflicts were obvious enough that the ALJ should have picked up on them without any assistance, for SSR 00–4p requires only that the ALJ investigate and resolve *apparent* conflicts between the VE's evidence and the DOT." *Overman v. Astrue*, 546 F.3d 456, 463 (7th Cir. 2008), citing *Prochaska v. Barnhart*, 454 F.3d 731, 735 (7th Cir. 2006)[emphasis in original].

Plaintiff has not identified an apparent conflict with the DOT. It is not at all

---

[5] Plaintiff is represented by a different attorney in this Court.

clear that plaintiff's past relevant work corresponds to the occupational title of Child Monitor as opposed to Nursery School Attendant. She does not argue that the duties of the Nursery School Attendant differ from the duties of her past relevant work, and a comparison of the duties described in the DOT and the duties of her past work as she explained them correspond. She takes issue only with the location, highlighting the fact that the Child Monitor job is performed "in private homes." However, it is clear from the description of the Child Monitor job and the alternate titles of that job that the job is performed in the *child's* home. Plaintiff's job was performed in her own home.

Ultimately, it is not for the Court to determine which DOT title matches plaintiff's past job. It was clear at the hearing that the VE had not identified DOT codes. Plaintiff did not object. She has not identified an apparent conflict with the DOT. She cannot now claim that the ALJ erred in accepting the unchallenged testimony of the VE.

## Conclusion

The Commissioner's final decision denying plaintiff's application for social security disability benefits is AFFIRMED.

The Clerk of Court is directed to enter judgment in favor of defendant.

**IT IS SO ORDERED.**

**DATED:   December 6, 2018.**

<u>s/ Clifford J. Proud</u>
**CLIFFORD J. PROUD**
**U.S. MAGISTRATE JUDGE**